U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

SEP 3 0 2005

ROBERT H. SHEMWELL, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| RICKEY TRAVIS | CIVIL ACTION NO. 04-0899 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| JOHN E. POTTER, POSTMASTER GENERAL | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

This matter is before the Court on Defendant John E. Potter's ("Potter") Motion for Summary Judgment. (Document 9). Potter moved for summary judgment on Plaintiff Rickey Travis' ("Travis") hostile work environment claim, retaliation claim, and state law claims under the Louisiana Employment Discrimination Law. Potter did not move for summary judgment on Travis' disability discrimination claim under the Rehabilitation Act of 1973.[1] After reviewing the entire record, the Court finds that summary judgment in favor of Potter is proper as a matter of law as to any Title VII hostile work environment claim related to race, the retaliation claim, and any state law claims under the Louisiana Employment Discrimination Law. Travis' claim of disability discrimination under the Rehabilitation Act of 1973 ("Rehabilitation Act"), including his hostile work environment claim under the Rehabilitation Act, shall proceed.

### I.  FACTUAL AND PROCEDURAL BACKGROUND.

Plaintiff Rickey Travis is a permanent modified limited duty city carrier at the Shreveport Main Post Office of the United States Postal Service ("USPS"). See Defendant's Motion for Summary Judgment, Exhibit B (Declaration of Andrew Easley), ¶

---

[1] Complaints of disability discrimination against federal employers are brought under the Rehabilitation Act of 1973, not the Americans with Disabilities Act.

4. Travis has been employed with the USPS for about 17 years. Id.

On June 7, 2000, Travis suffered a shoulder injury while on duty with the USPS. Id., ¶ 5. The injury was accepted by the Office of Workers' Compensation Programs on September 12, 2000 and Travis' physician declared his condition to be permanent. Id. On February 27, 2002, Travis accepted a permanent modified job offer from the USPS. Id.

During his employment with the USPS, Travis was charged with leave without pay on several occasions for offenses ranging from leaving work without notifying management, failure to report to work, and being absent from work without requesting leave in advance. See id., Exhibit A (Declaration of Patsy Pigue), ¶¶ 5-7. Yet, it appears that Travis was paid for the hours charged as leave without pay after the National Association of Letter Carriers ("NALC") filed grievances on his behalf. See id., Exhibit A, ¶¶ 5-7; Exhibit D (Timekeeping Record); Exhibit E (Timekeeping Record). Other than attendance problems, the summary judgment record also reveals that Travis has been involved in verbal, and sometimes violent, confrontations with co-workers and management personnel during his employment with the USPS. See id., Exhibit A, ¶ 8; Exhibit B, ¶¶ 6-12. There is one such incident that is particularly relevant to this case.

On June 25, 2002, there was a verbal and physical confrontation between Travis and fellow USPS employee Freddie Robinson ("Robinson"). Id., Exhibit B, ¶ 11. Andrew Easley ("Easley"),[2] was notified of the confrontation between Travis and Robinson on June 25, 2002. Id., ¶ 12. Easley spoke with Robinson and instructed him to write a statement regarding the incident. Id. Easley received Robinson's written statement within a few

---

[2]Andrew Easley serves as the Manager of Customer Services for the USPS in Shreveport, Louisiana. See Defendant's Motion for Summary Judgment, Exhibit B, ¶ 1.

hours. Id. Robinson reported that Travis shoved him with his chest and shoulder during the confrontation. Id., ¶ 11. Robinson also stated that Travis told him he would "kick his ass" and also called him a "little pussy ass nigger" and a "little punk ass pussy." Id.

Later the same day, Easley responded to a request from Travis asking for a signature on his PS Form 3971, a form used to account for leave and absences. Id., ¶ 12. Travis informed Easley that his shoulder was hurting and he wanted to go home on sick leave. Id. Easley asked Travis about the incident with Robinson that had occurred earlier that morning. Id. Easley requested that Travis provide a written statement detailing the incident before he went home on sick leave. Id. Travis informed Easley that he could not complete the written statement at that time because his shoulder was hurting. Id. Easley then asked for a verbal account of the incident and Travis complied. Id. Easley signed Travis' leave form and instructed Travis to provide a written statement regarding the incident the next morning. Id. Travis provided his written statement to Easley on the morning of June 26, 2002. Id. Other employees also provided Easley with statements regarding the incident between Travis and Robinson. Id.

Easley notified Patsy Pigue, the Postmaster of Shreveport, Louisiana, of the incident between Travis and Robinson on June 25, 2002. Id. On June 26, 2002, pursuant to article 16.7 of the collective bargaining agreement, Travis was placed on non-pay status pending the results of an investigation into the incident. Id., Exhibit V (Correspondence from Easley to Travis). On the morning of June 26, 2003, the Threat Assessment Team ("TAT") met to investigate the incident. Id., Exhibit U (Letter to Easley from TAT). On July 3, 2002, Easley was informed of TAT's assessment of the incident between Travis and Robinson and learned that TAT's consensus was that "the incident more than likely occurred as

reported by Freddie Robinson." Id.

Easley then requested a "Notice of Proposed Removal" for Travis. Id., Exhibit B, ¶ 12. The request was sent to the local Labor Relations Specialist on July 22, 2002. Id. The notice was sent to Travis and he received the notice on August 10, 2002. Id. On August 10, 2002, Travis was moved from non-pay status to administrative leave with pay pending the final outcome of the investigation. Id. Pigue received a supplemental report from the USPS Inspection Service on February 10, 2003. Id., Exhibit X (Letter to Pigue from USPS Inspector). The supplemental report stated that a polygraph was conducted by the Inspection Service on both Travis and Robinson on November 6, 2002. Id. The results of Travis' polygraph were inconclusive, as Travis did not follow the inspector's instructions closely enough to get a good reading. Id. The results of Robinson's polygraph indicated no deception and were truthful. Id. On February 19, 2003, Pigue sent a Letter of Decision to Travis recommending removal effective February 21, 2003. Id., Exhibit AA (Letter of Decision).

While the Court could not discern the exact details from the summary judgment record, it appears that Travis contacted the NALC shortly after Easley requested his removal in July 2002. See Document 1, Exhibit 2 (Regional Arbitration Panel Ruling). On July 24, 2002, the NALC filed a formal grievance on behalf of Travis. Id. The matter went to arbitration. Id. The issue before the arbitrator was whether management had just cause to issue the Notice of Proposed Removal to Travis. Id. The arbitrator issued her ruling on February 4, 2004 and sustained Travis' grievance. Id. Specifically, the arbitrator stated:

> At the time the Letter (of Proposed Removal) was issued, . . . the evidence failed to support the intolerable threat of violence necessary to Propose Removal from his (Travis') position. . . .

> Although the Notice of Proposed Removal cannot stand, there was clearly evidence that there was evidence sufficient to justify discipline. Carrier Travis' behavior fell into the realm of improper conduct. It created a disturbance on the workroom floor that effected several employees. . . .
>
> Although the Notice of Proposed Removal will be set aside, the evidence supports a suspension of fourteen (14) days. The employee is to remain at work, and in the event of lost time, he is to be restored less the time of his suspension. Further, this employee has a problem with management of anger and his response to authority. His return to work will be further conditioned on his participation in the Employee Assistance Program for a period of no less that 6 months.

Id.

Further, Travis filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on July 24, 2002 alleging discrimination based on physical disability and retaliation. See id., Exhibit 1 (Notice of Final Action). On December 17, 2003, Administrative Judge Geraldine H. Page of New Orleans District EEOC Office issued a decision related to Travis' complaint and found no discrimination on the part of the USPS. See id. On January 20, 2004, the EEOC issued a Notice of Final Action as to Travis' grievance. Id. The EEOC affirmed the decision of the Admistrative Judge and found that Travis had not shown that he was the victim of illegal discrimination. Id.

On April 20, 2004, Travis filed the instant employment discrimination suit. See Document 1. In his complaint, Travis asserts claims under Title VII, the Rehabilitation Act of 1973, and the Louisiana Anti-Discrimination Statute. See id. Potter answered the complaint on July 6, 2004, arguing, *inter alia*, that Travis could not establish a prima facie case of discrimination or retaliation. See Document 5. Potter filed the instant a motion for summary judgment on Travis' hostile work environment claim, retaliation claim, and discrimination claim under Louisiana law. See Document 9. Travis opposed the motion for summary judgment on December 6, 2004. See Document 11.

## II. LAW AND ANALYSIS.

### A. Summary Judgment Standard.

Summary judgment will be granted when "... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.56(c); See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact. Liquid Air Corp., 37 F.3d at 1075. A dispute over a material fact is genuine, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Kee v. City of Rowlett Texas, 247 F.3d 206, 210 (5th Cir. 2001). If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. Liquid Air Corp., 37 F.3d at 1075.

If the movant does, however, meet this burden, the burden shifts and the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. 317, 106 S.Ct. 2548. To that end, the Court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. Ameristar Jet Charter v. Signal Composites, 271 F.3d 624, 626 (5th Cir. 2001). However, the Court will not assume that the nonmoving party could or would prove the necessary facts. Liquid Air Corp., 37 F.3d at 1075. The nonmoving party's burden will not be satisfied by "some metaphysical doubt as to the material facts," by "conclusory allegations," by "unsubstantiated assertions," or by only a "scintilla" of evidence. Id. Therefore, summary judgment is appropriate in any case "where critical

evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Armstrong v. City of Dallas, 997 F.2d 62 (5th Cir. 1993); see generally Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986).

With these principles in mind, we now turn to a review of the claims at issue in the instant case.

### B. Hostile Work Environment.

In his complaint, Travis references "Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000 (e) *et seq.*" and states that "USPS employees shall be free of discrimination based on race, color, religion, sex or national origin." Document 1 at 1. He specifically alleges "that as a result of the actions taken by USPS, [he has] been subjected to a series of discriminatory violations in the work place causing an increasingly *hostile work environment* resulting in irreparable harm." Id. at 4 (emphasis added). He further contends "that the actions of the USPS were outrageous and methodically calculated with the intent of causing harm, discrediting him before other employees and defaming his character." Id. Based on these allegations, Potter construed Travis' complaint as asserting a Title VII hostile work environment claim related to his race.

To prevail on his Title VII hostile work environment claim, Travis must prove that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on his membership in the protected group; and (4) the harassment affected a term, condition or privilege of employment. Frank v. Xerox Corp., 347 F.3d 130, 138 (5th Cir. 2003). Travis must have "subjectively perceive[d] the harassment as sufficiently severe or pervasive, and this subjective perception must [have

been] objectively reasonable." Id., citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 114 S.Ct. 367 (1993). The Court must also "consider the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance." Id., citing Walker v. Thompson, 214 F.3d 615, 625 (5th Cir. 2000).

At the outset, the Court notes that no where in his complaint, other than quoting the language of 42 U.S.C. § 2000(e) *et seq.*, or his opposition to Potter's motion for summary judgment does Travis mention racial discrimination. Rather, in his complaint, and again in his opposition, he focuses on his physical disability, i.e., his shoulder injury. Thus, the Court believes that summary judgment analysis as to any Title VII hostile work environment claim related to Travis' race is unnecessary, as Travis has not plead such a claim.

Notwithstanding, even if the Court assumes that Travis plead a Title VII hostile work environment claim related to his race, such claim fails. The record indicates that Travis is a member of the protected class, as he is an African American. See Document 9, Exhibit W at 3. Yet, even if Travis was subject to some sort of unwelcome harassment, there is simply no evidence in the summary judgment record that even remotely suggests that any of the USPS's actions were based on Travis' race. See Frank, 347 F.3d at 138. Accordingly, any Title VII hostile work environment claim related to Travis' race fails.

After analyzing the complaint and other pleadings contained in the summary judgment record, the Court believes that Travis has asserted a hostile work environment claim under the Rehabilitation Act of 1973 relating to his physical disability. See Document 1, ¶ 8. In Soledad v. U.S. Dep't of Treasury, 304 F.3d 500, 506 (5th Cir. 2002), the Fifth Circuit discussed, in great detail, a hostile work environment claim under the Rehabilitation

Act of 1973 and noted the difference between such a claim and a hostile work environment claim under the Americans with Disabilities Act ("ADA"). However, because Potter has failed to move this Court for summary judgment as to Travis' hostile work environment claim under the Rehabilitation Act of 1973, such claim must proceed.[3]

**C.  Retaliation.**

In his complaint, Travis states a retaliation claim. Document 1, ¶ 8. He specifically alleges that the USPS retaliated against him for filing numerous EEOC complaints – "which is 'protected activity.'" Id., ¶ 8. He further alleges that "the investigation conducted by USPS . . . was . . . retaliation" and that he "was engaged in a protected activity, the adverse employment action occurred without just cause, and there existed a causal link between the protected activity and the adverse action taken by USPS." Id., ¶¶ 11, 12. Thus, the Court infers that Travis is alleging that the USPS's investigation of the June 25, 2002 incident with Robinson, the notice of proposed removal, and his placement on non-pay status were all retaliatory acts for his filing numerous EEOC complaints.

In order to establish a prima facie case of retaliation, Travis must demonstrate that (1) he engaged in a protected activity; (2) his employer took adverse employment action against him; and (3) a causal connection existed between the protected activity and the adverse action. See Shannon v. Henderson, 275 F.3d 42 (5th Cir. 2001) (citation omitted).[4]  Once Travis has established his prima facie case, then the USPS must supply

---

[3] A motion for summary judgment as to Travis' claim or claims under the Rehabilitation Act has not been filed before this Court. The Court notes that a scheduling order has not issued in this case and, thus, a dispositive motion deadline has not been set in this matter.

[4] While Potter has briefed the retaliation claim under Title VII, the Court finds that the proper analysis of Travis' retaliation claim is under the Rehabilitation Act of 1973. However

a legitimate, non-discriminatory explanation for the adverse employment action. Id. Then, Travis must bring forth evidence that the USPS's proffered reason is pretextual. Id. Travis bears the ultimate burden of proof to establish that the adverse employment action would not have occurred "but for" the protected activity. Id. (citations omitted).

In the instant matter, Travis' protected activity is his filing of an EEOC complaint on July 24, 2003, alleging discrimination based on physical disability and retaliation.[5] Document 1, ¶8; Exhibit 1. Even if the Court assumes that Travis meets the other two requirements for establishing a prima facie case of retaliation, i.e., an adverse employment action and a causal connection, the USPS has articulated legitimate nondiscriminatory reasons for its alleged adverse employment actions relating to Travis, namely its investigation of Travis relating to the June 25, 2002 incident with Robinson, its placement of Travis on non-pay status, and its notice of proposed removal. As evidenced in the factual background section of this memorandum ruling, Travis has a history of attendance,

---

this distinction makes little difference in the analysis of the claim, as the same burden shifting framework applies to retaliation claims under Title VII, the ADA, and the Rehabilitation Act of 1973. See Shannon v. Henderson, 275 F.3d 42 (5th Cir. 2001) (stating that "in evaluating retaliation claims under the ADA and Title VII . . . this court has applied the burden-shifting framework outlined in McDonnell Douglas. . . . While this court has not explicitly held that this framework would also be applicable to a retaliation claim brought under the Rehabilitation Act, both the language of the Act and the findings of our sister circuits indicate that the same framework should be applied to retaliation claims under the Rehabilitation Act.").

[5]The Court finds no competent summary judgment evidence that Travis filed any other EEOC complaints. While Travis filed a multitude of exhibits with his opposition to the motion for summary judgment, he did not outline the numerous EEOC complaints he allegedly filed in his opposition brief. Even if there is evidence of the numerous EEOC filings in the summary judgment record, Travis has failed to refer to such evidence in his opposition brief. Thus, the evidence is not properly before the Court. See Malacara v. Garber, 353 F.3d 393, 405 (5th Cir. 2003). Further, this Court has no duty under Rule 56 "to sift through the record in search of evidence to support" Travis' opposition to the motion for summary judgment. Id.

leave, and other disciplinary problems during his employment with the USPS. The June 25, 2002 incident with Robinson involved allegations of verbal and physical attacks. Thus, because of the USPS's zero tolerance policy for workplace violence, a full and thorough investigation had to be conducted regarding the June 25, 2002 incident. See Document 9, Exhibit 1, ¶ 8. The investigation included written statements from Robinson, Travis, and other witnesses; an investigation by TAT; and an investigation and report from the Inspection Service, including results from polygraph tests administered to both Robinson and Travis. The USPS maintains that it based its employment actions as to Travis on the findings from this full and thorough investigation, not on the fact that he filed an EEOC complaint on July 24, 2002.

While the Court is cognizant of the arbitrator's February 2, 2004 decision stating "that there was not a fair investigation [of the June 25, 2002 incident] conducted in the sense contemplated by just cause," even the arbitrator found that Travis did create a disturbance and that his conduct was improper under the circumstances presented. Document 1, Exhibit 2 at 8. The arbitrator further found that "although the Notice of Proposed Removal cannot stand, there was clearly evidence that there was evidence sufficient to justify discipline." Id. Thus, even considering the arbitrator's ruling, the summary judgment evidence does support the USPS's justifications for its employment and disciplinary actions relating to Travis.

Further, Travis has not rebutted the USPS's legitimate nondiscriminatory reasons by showing pretext. He has not established that he would not have been investigated, placed on non-pay status, or issued a notice of proposed removal "but for" the fact that he filed an EEOC complaint. Even with the arbitrator's finding that notice of proposed removal

could not stand, Travis has presented no evidence to this Court that any of the USPS's actions were related to his filing the EEOC complaint on July 24, 2002. Simply put, Travis has provided no evidence that undermines the legitimacy of the USPS's explanation for its actions. Accordingly, summary judgment as to Travis' retaliation claim is **GRANTED**.

### D. Louisiana Employment Discrimination Law.

Travis' claim under the so-called "Louisiana Anti-Discrimination Statute – LSA R.S. 23:1006"[6] likewise fails, as this Court lacks subject matter jurisdiction over the claim. After thoroughly reviewing Travis' complaint, the Court finds that Potter is being sued in his official, as opposed to his individual, capacity as the Postmaster General of the USPS. See Document 1 at 2. Thus, Travis' suit is essentially a suit against the United States. See generally Humphries v. Various Federal USINS Employees, 164 F.3d 936, 941 (5th Cir.1999) (stating that a contract suit against a government agent in his official capacity is a suit directly against the sovereign); Bank One, Texas, N.A. v. Taylor, 970 F.2d 16, 33 (5th Cir. 1992) (holding that "even if the United States was not named as a party in the original action, if the judgment sought would expend itself upon the public treasury or domain, or interfere with public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act, the suit will be construed as one against the United States requiring a waiver of sovereign immunity") (citations and internal quotations omitted).

Sovereign immunity is a jurisdictional bar to suits against the United States and a waiver of such immunity can not be implied. Bank One, Texas, N.A., 970 F.2d at 33 (5th

---

[6]Louisiana Revised Statute 23:1006 was repealed in 1997. The Court is assuming that Travis is asserting state law employment discrimination claims under the Louisiana Employment Discrimination Law, La. R.S. 23: 301 *et seq.*

Cir. 1992) (citations omitted). The waiver must be unequivocally expressed. Id. If no such express waiver exists, then sovereign immunity operates as a jurisdictional bar. Id.

Title 42, United States Code, Section 2000e-16 states, in pertinent part:

(a) Discriminatory practices prohibited; employees or applicants for employment subject to coverage.

All personnel actions affecting employees or applicants for employment . . . in the United States Postal Service and the Postal Rate Commission . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin.

Thus, under section 2000e-16, the United States has consented to being sued by a United States Postal Service employee under Title VII for employment discrimination. However, Travis has presented no evidence to the Court that the United States has waived its sovereign immunity as to discrimination actions under state law. "Louisiana cannot by its law make the United States liable. The United States is liable only to the extent it waives sovereign immunity." Owen v. U.S., 935 F.2d 734, 736 (5th Cir. 1991). Yet, the Fifth Circuit has specifically acknowledged that the United States has not consented to be sued for discrimination by its employees under state law. Hogan v. U.S., Dep't of Veterans Affairs, No. Civ. A 99-868, 1999 WL 1138529, at *2 (5th Cir. Dec. 7, 1999).

Based on the foregoing, this Court lacks subject matter jurisdiction over Travis' state law claim of discrimination under the Louisiana Employment Discrimination Law. Accordingly, such claim is **DISMISSED** for lack of subject matter jurisdiction.

## IV. CONCLUSION.

After reviewing the entire record, the Court finds that summary judgment in favor of Defendant John E. Potter is proper as a matter of law as to any Title VII hostile work environment claim related to race, the retaliation claim, and any state law claims under the

Louisiana Employment Discrimination Law. Travis' claim of disability discrimination under the Rehabilitation Act of 1973, including his hostile work environment claim under the Rehabilitation Act, shall proceed.

Therefore, Defendant John E. Potter's Motion for Summary Judgment (Document 9) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff Rickey Travis' Title VII hostile work environment claim related to race, retaliation claim, and state law claims under the Louisiana Employment Discrimination Law are **DISMISSED WITH PREJUDICE**. Plaintiff Rickey Travis' claim of disability discrimination under the Rehabilitation Act of 1973, including his hostile work environment claim under the Rehabilitation Act, remains.

**THUS DONE AND SIGNED**, Shreveport, Louisiana, this 30th day of September, 2005.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE